UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

---

ASSURED GUARANTY CORP. and ASSURED
GUARANTY MUNICIPAL CORP.,

                                   Plaintiffs,

              -against-

COMMONWEALTH OF PUERTO RICO, PUERTO RICO
HIGHWAYS AND TRANSPORTATION AUTHORITY,
GOVERNMENT DEVELOPMENT BANK FOR PUERTO
RICO, ALEJANDRO GARCÍA PADILLA, CARMEN
VILLAR PRADOS, MELBA ACOSTA FEBO, JUAN C.
ZARAGOZA GÓMEZ, and JOHN DOES 1-4,

                                   Defendants.

No. 16-cv-_____

---

## COMPLAINT

Plaintiffs Assured Guaranty Corp. ("AGC") and Assured Guaranty Municipal

Corp., f/k/a Financial Security Assurance Inc. ("AGM" and, together with AGC, "Assured" or

"Plaintiffs"), by their attorneys Casellas Alcover & Burgos P.S.C. and Cadwalader, Wickersham

& Taft LLP, for their Complaint against defendants the Commonwealth of Puerto Rico, the

Puerto Rico Highways and Transportation Authority, the Government Development Bank for

Puerto Rico, Hon. Alejandro García Padilla, Hon. Carmen Villar Prados, Hon. Melba Acosta

Febo, Hon. Juan C. Zaragoza Gómez, and John Does 1-4 (collectively, the "Defendants"), allege

as follows:

## NATURE OF THIS ACTION

1.      Plaintiffs AGC and AGM issued insurance policies that guarantee

payments on bonds issued by Defendant Puerto Rico Highways and Transportation Authority

("PRHTA").  The Governor's Administrative Bulletins No. OE-2016-18, EO-2016-30, and EO-

2016-31 (collectively, the "Emergency Orders") unlawfully divert PRHTA toll revenues pledged to secure those bonds and unlawfully provide that PRHTA may use such pledged toll revenues to (i) pay expenses of its own operations that are subordinate to the bonds and (ii) fund "essential services" on behalf of the government of the Commonwealth of Puerto Rico, which "essential services" remarkably are defined to include payments to financially-distressed Defendant the Government Development Bank for Puerto Rico.

2.      This unlawful diversion of secured bondholder collateral is preempted and prohibited by the Bankruptcy Code and by several provisions of the recently-enacted Puerto Rico Oversight, Management, and Economic Stability Act, Pub. L. No. 114-187, 130 Stat. 549 (2016) (to be codified at 48 U.S.C. § 2101 et seq.) ("PROMESA").  The diversion violates the U.S. Constitution, the Puerto Rico Constitution, and Puerto Rico law, in further violation of PROMESA.  Therefore, Plaintiffs seek (i) a declaration that the Emergency Orders are invalid, null, and void, (ii) an injunction enjoining enforcement of the Emergency Orders, and (iii) damages under Section 407(a) of PROMESA for the value of the toll revenues diverted pursuant to the Emergency Orders.

## THE PARTIES

3.      Plaintiff Assured Guaranty Corp. or AGC is a Maryland insurance company with its principal place of business at 31 West 52nd Street, New York, New York 10019.

4.      Plaintiff Assured Guaranty Municipal Corp. or AGM is a New York insurance company with its principal place of business at 31 West 52nd Street, New York, New York 10019.

5.    Defendant the Commonwealth of Puerto Rico (the "Commonwealth") is a territory of the United States.

6.    Defendant PRHTA is a public corporation organized under the laws of the Commonwealth.

7.    Defendant the Government Development Bank for Puerto Rico ("GDB") is a public corporation organized under the laws of the Commonwealth.

8.    Defendant Hon. Alejandro García Padilla (the "Governor") is the Governor of the Commonwealth.  Plaintiffs sue the Governor in his official capacity.

9.    Defendant Hon. Carmen Villar Prados (the "Executive Director") is the Executive Director of PRHTA and in that capacity is empowered to implement the Emergency Orders.  Plaintiffs sue the Executive Director in her official capacity.

10.    Defendant Hon. Melba Acosta Febo (the "GDB President") is the President of GDB and in that capacity is empowered to implement the Emergency Orders. Plaintiffs sue the GDB President in her official capacity.

11.    Defendant Hon. Juan C. Zaragoza Gómez (the "Secretary of Treasury") is the Secretary of Treasury of the Commonwealth and in that capacity is empowered to implement the Emergency Orders.  Plaintiffs sue the Secretary of Treasury in his official capacity.

12.    Defendant John Doe 1 is any successor to Hon. Alejandro García Padilla as Governor of the Commonwealth.  Plaintiffs sue John Doe 1 in his or her official capacity.

13.    Defendant John Doe 2 is any successor to Hon. Carmen Villar Prados as Executive Director of PRHTA and in that capacity is empowered to implement the Emergency Orders.  Plaintiffs sue John Doe 2 in his or her official capacity.

14.     Defendant John Doe 3 is any successor to Hon. Melba Acosta Febo as President of GDB and in that capacity is empowered to implement the Emergency Orders. Plaintiffs sue John Doe 3 in his or her official capacity.

15.     Defendant John Doe 4 is any successor to Hon. Juan C. Zaragoza Gómez as Secretary of Treasury of the Commonwealth and in that capacity is empowered to implement the Emergency Orders. Plaintiffs sue John Doe 4 in his or her official capacity.

## JURISDICTION AND VENUE

16.     This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under PROMESA, title 11 of the United States Code (the "Bankruptcy Code"), and the Constitution of the United States (the "U.S. Constitution"). Plaintiffs seek a declaration and related relief in this case of actual controversy pursuant to 28 U.S.C. §§ 2201 and 2202.

17.     Venue is proper in this District under 28 U.S.C. § 1391 because all or a substantial part of the events giving rise to this action occurred in this District.

## I.    Plaintiffs Insure Bonds Issued By PRHTA

18.     Plaintiffs provide financial guaranty insurance, which guarantees scheduled payments of interest and principal on a bond or other obligation. Under relevant provisions of the applicable bond documents, bond insurance policies, and applicable law, payment by Plaintiffs entitles them to receive the payments due on the bonds, which continue to remain payable by the municipal issuer. In effect, by paying the bondholders on behalf of the municipal issuer, Plaintiffs step into the shoes of the bondholders and the municipal issuer remains liable for the full amount of the payment made by Plaintiffs to the bondholders.

19.     Governments and municipalities, including Defendants the Commonwealth and PRHTA, have historically taken advantage of financial guaranty insurance because it significantly enhances their ability to raise funds and reduces their interest cost on the bonds insured. Such insurance is especially important for issuers such as the Commonwealth and PRHTA, who have—and will have—significant borrowing needs, notwithstanding their low credit ratings.

## II.    The PRHTA Bonds

20.     Defendant PRHTA is a public corporation created by Act No. 74-1965 (the "Enabling Act") to assume responsibility for the construction of highways and other transportation systems in Puerto Rico. See 9 L.P.R.A. § 2002 (2013). Under the Enabling Act, PRHTA has the power to "sue and be sued," to "make contracts and to execute all instruments necessary or incidental in the exercise of any of its powers," and to issue bonds. 9 L.P.R.A. § 2004(g), (h), (*l*). Pursuant to the Enabling Act, PRHTA has issued certain bonds (the "PRHTA Bonds") under general bond resolutions (the "Resolutions") adopted in 1968 and 1998. See PRHTA Res. 68-18; PRHTA Res. 98-06. Among other projects, the proceeds of PRHTA Bonds have been used to finance the construction of and necessary repairs to numerous toll highways and connecting roads, including PR-20, PR-22, PR-52, and PR-53. The PRHTA Bonds have an outstanding principal amount of approximately $4.5 billion.

21.     Pursuant to the Enabling Act and Resolutions, the PRHTA Bonds are secured by a gross lien on (i) revenues derived from PRHTA's toll facilities (the "Toll Revenues"); (ii) gasoline, diesel, crude oil, and other excise taxes levied by the Commonwealth pursuant to, among other laws, Act No. 34-1997, Act No. 1-2011, and Act No. 1-2015 (the "Excise Taxes"); and (iii) motor vehicle license fees imposed under, among other laws, Act No. 22-2000 (the "Vehicle Fees", and together with the Excise Taxes and the Toll Revenues, the

"PRHTA Pledged Funds").  PRHTA's rights and powers under the Enabling Act include the right and power to secure the PRHTA Bonds by its pledge to the bondholders of the Toll Revenues and other PRHTA Pledged Funds.  See 9 L.P.R.A. § 2004(*l*).  The Resolutions require PRHTA to transfer the Toll Revenues and the other PRHTA Pledged Funds to the fiscal agent (the "Fiscal Agent") for the PRHTA Bonds on a monthly basis.  See PRHTA Res. 68-18 § 401; PRHTA Res. 98-06 § 401.

22.    PRHTA Bonds are non-recourse bonds, payable solely from the Toll Revenues and other PRHTA Pledged Funds.  Thus the Emergency Orders divert the only source of bond payments.  Moreover, because PRHTA Bonds are secured by a "gross lien" on all of the Toll Revenues and other PRHTA Pledged Funds, contrary to the Emergency Orders, operating expenses of PRHTA may only be paid *after* PRHTA satisfies its debt service and reserve fund requirements with respect to PRHTA Bonds.  See PRHTA Res. 68-18 § 401, 601-02; PRHTA Res. 98-06 § 401, 601-02.

23.    Net of reinsurance, Assured has insured approximately $1.2 billion of PRHTA Bonds currently outstanding.  Under its insurance agreements and insurance policies, Assured is deemed to be the sole holder of PRHTA Bonds for purposes of exercising all rights and remedies of PRHTA Bondholders.  See, e.g., Insurance Agreement for PRHTA Series AA Bonds § 1(g); Insurance Agreement for Series L Bonds § 4; Insurance Agreement for PRHTA Series N Bonds § 5.  In addition, Assured is recognized as a third-party beneficiary under the Resolutions.  See, e.g., Insurance Agreement for PRHTA Series AA Bonds § 1(k); Insurance Agreement for Series L Bonds § 6.

## III.    The Subordinated GDB Lines Of Credit

24.    In addition to its indebtedness on account of PRHTA Bonds, PRHTA is indebted to Defendant GDB with respect to certain lines of credit (the "Subordinated GDB Lines

of Credit") whose repayment is subordinated to the repayment of PRHTA Bonds. For example, the 2010 official statement for the PRHTA Bonds states that "[PRHTA] has financed some of its recent capital expenditures and working capital requirements with Government Development Bank lines of credit, **the repayment of which is subordinate to the [PRHTA Bonds].**"[1]

## IV.    The Recovery Act

25.    On June 28, 2014, the Commonwealth enacted the Puerto Rico Public Corporation Debt Enforcement and Recovery Act (the "Recovery Act"), which enabled certain of the Commonwealth's public corporations to implement a recovery or restructuring plan for their debt. Specifically, chapter 2 of the Recovery Act created a "consensual" debt modification procedure that permitted the public corporations to propose changes to the terms of their outstanding debt instruments by, for example, changing the interest rate or maturity date of the debt. Chapter 3 of the Recovery Act, meanwhile, loosely mirrored chapters 9 and 11 of the Bankruptcy Code by creating a court-supervised restructuring process that permitted the adjustment of debts, modification of liens, and diversion of collateral.

26.    On February 6, 2015, this Court held that the Recovery Act was preempted by Section 903(1) of the Bankruptcy Code, which provides that "a State law prescribing a method of composition of indebtedness of [a] municipality may not bind any creditor that does not consent to such composition." Franklin Cal. Tax-Free Tr. v. P.R., 85 F. Supp. 3d 577, 595 (D.P.R.) ("Franklin I") (emphasis omitted), aff'd, 805 F.3d 322 (1st Cir. 2014) ("Franklin II"), aff'd, 136 S. Ct. 1938 (2016) ("Franklin III").

27.    On July 6, 2015, the United States Court of Appeals for the First Circuit (the "First Circuit") affirmed this Court's decision. Franklin II, 805 F.3d at 325.

---

[1]    See Highway Revenue Refunding Bonds Offering Official Statement at 32 (June 17, 2010), http://www.gdb-pur.com/investors_resources/documents/PRHighwayaFIN_000.pdf (emphasis added).

28.    On June 13, 2016, the United States Supreme Court affirmed the First Circuit, broadly holding that Section 903(1) "bars Puerto Rico from enacting its own municipal bankruptcy scheme to restructure the debt of its insolvent public utilities companies." Franklin III, 136 S. Ct. at 1942.

## V.    The Clawback Order

29.    On November 30, 2015, the Governor issued Administrative Bulletin No. OE-2015-046 (the "Clawback Order").    The Clawback Order directs the Puerto Rico Department of Treasury to withhold the Excise Taxes and Vehicle Fees (but not the Toll Revenues that are the subject of this action) for application to the Commonwealth's "public debt" (including general obligation bonds) instead of releasing such PRHTA Pledged Funds for application to the PRHTA Bonds. Clawback Order at 3-4. In a related action pending before this Court, Plaintiffs have asserted that the Clawback Order violates the Contracts Clause and Takings Clause of the United States Constitution (the "U.S. Constitution"). See Assured Guar. Corp. v. García Padilla, No. 16-cv-01037 (D.P.R. Jan. 7, 2016), ECF No. 1.

## VI.    The Moratorium Act

30.    On April 6, 2016, the Commonwealth enacted the Puerto Rico Emergency Moratorium and Financial Rehabilitation Act, Act No. 21-2016 (the "Moratorium Act"), which authorizes the Governor to declare states of emergency with respect to a number of Puerto Rico public entities, including PRHTA. The Moratorium Act delegates the Commonwealth's police power to the Governor, expressly stating that "pursuant to the Commonwealth's police powers, we the Legislative Assembly of the Commonwealth of Puerto Rico have resolved to provide the

Governor with powers to declare a state of emergency for the Commonwealth and its instrumentalities[.]"[2]

31.     In particular, Section 201(d) of the Moratorium Act provides that:

If ordered by the Governor during the emergency period created by this section, the following obligations may be suspended or modified, if applicable, until the end of the covered period, without the need for further legislation,—. . .

ii.     any statutory or other obligation to transfer money (or its equivalent) to pay or secure any covered obligation (or take any action in furtherance thereof)[.]

Moratorium Act § 201(d).

32.     Section 201(b) of the Moratorium Act generally provides for a stay of any actions to recover on the "Covered Obligations" of a Puerto Rico public entity with respect to which a state of emergency has been declared.   The Moratorium Act defines "Covered Obligation" to include "any interest obligation [or] principal obligation."  See Moratorium Act § 103(*l*).

33.     On May 5, 2016, Act No. 40-2016 was enacted.   Act No. 40-2016 amended Section 108 of the Moratorium Act to provide:

SECTION 108.  It is the Legislative Assembly's finding that, given the Commonwealth's ongoing fiscal crisis, during this extraordinary emergency period the Government should prioritize the payment of essential services over debt service not only to provide for the health, safety and welfare of the residents of the Commonwealth but also to avoid a further economic downturn and fiscal and humanitarian crisis that would ultimately materially worsen the creditor's [*sic*] recovery on their Puerto Rico Bonds. **This includes prioritizing the safety, soundness and stability of depositary financial institutions, protecting their deposits.**

---

[2]     Moratorium Act at 53 (¶ F) (emphasis added); see also, e.g., Moratorium Act § 201(b)(iv) ("[T]he Governor may take any and all actions that are reasonable and necessary . . . to protect the health, safety and welfare of the residents of the Commonwealth").

Act No. 40-2016 § 9 (emphasis added).

   34. Act No. 40-2016 defines GDB as a "depositary institution." Act No. 40-2016 § 9(kk). Therefore, under the Moratorium Act as amended by Act No. 40-2016, payments to GDB qualify as payments for "essential services" that have priority over debt service, including on PRHTA Bonds. This allows the junior PRHTA creditor GDB to receive payments from Toll Revenues ahead of senior secured PRHTA Bondholders.

   35. Other actions and motions pending before this Court, to which Plaintiffs are not a party, assert that the Moratorium Act is preempted by the Bankruptcy Code and unconstitutional. See Brigade Leveraged Cap. Structures Fund Ltd. v. García Padilla., No. 16-cv-01610 (D.P.R. Apr. 4, 2016), ECF No. 1; Nat'l Pub. Fin. Guar. Corp. v. García Padilla, No. 16-cv-02101 (D.P.R. June 15, 2016), ECF No. 1; Trigo Gonzalez v. García Padilla, No 16-cv-02257 (D.P.R. June 30, 2016), ECF No. 1; Peaje Invs. LLC v. García Padilla, No. 16-cv-02365 (D.P.R. July 18, 2016), ECF No. 1.

## VII. The Emergency Orders

   36. On May 17, 2016, pursuant to the Moratorium Act, the Governor issued Administrative Bulletin No. OE-2016-018 ("EO-18"), declaring a state of emergency with respect to PRHTA. EO-18 orders the suspension of all obligations of PRHTA to transfer Toll Revenues to the Fiscal Agent. EO-18 at 5. EO-18 further authorizes PRHTA to utilize the Toll Revenues for the provision of "essential services for the protection of the health, security, and well-being of the residents of the Commonwealth." EO-18 at 5-6. Pursuant to Section 201(b) of the Moratorium Act, EO-18 also orders that no actions will be commenced and no claims or proceedings will be started or continued in any court related to or arising under a Covered Obligation of PRHTA, including actions or proceedings related to PRHTA Bonds.

37.    On June 30, 2016, shortly after the enactment of PROMESA, the Governor issued Administrative Bulletin No. EO-2016-30 ("EO-30"), which extends the emergency period for PRHTA through the entirety of the "covered period," which the Moratorium Act defines to mean through and including January 31, 2017, subject to a possible two-month extension by the Governor. See Moratorium Act § 103(m). EO-30 also suspends payment of all debt obligations of PRHTA under the Resolutions that come due during the covered period, except for payments that can be made from funds on deposit with the Fiscal Agent. EO-30 at 2.

38.    Also after PROMESA was enacted into law on June 30, 2016, the Governor issued Administrative Bulletin No. EO-2016-31 ("EO-31"). EO-31 continues the suspension of PRHTA's obligations under the Resolutions to transfer Toll Revenues to the Fiscal Agent. EO-31 at 3. Remarkably, EO-31 does *not* suspend or modify PRHTA's obligation to transfer revenues pledged for the payment of the Subordinated GDB Lines of Credit, and, instead, only modifies PRHTA's obligation to GDB to the extent necessary to provide PRHTA with the revenues it requires to fund operating expenses or "essential services." EO-31 at 3. Accordingly, the Emergency Orders do not suspend payments by PRHTA to GDB. The net result is that the Emergency Orders authorize PRHTA to divert Toll Revenues to the payment of subordinated PRHTA operating expenses or "essential services," which may include payments to the insider affiliate GDB. The Moratorium Act and Emergency Orders thus unlawfully prioritize payment to GDB of junior debt and other amounts masquerading as "essential services" ahead of payments to the senior secured PRHTA Bonds, and permit the unlawful diversion of Toll Revenues for those purposes.

39.    To date, approximately $21 million in Toll Revenues have been diverted from the payment of PRHTA Bonds to other purposes pursuant to the Emergency Orders. If the

Emergency Orders are permitted to remain in effect, approximately $84.7 million in Toll Revenues will be diverted pursuant to the Emergency Orders by the end of the "covered period" on January 31, 2017. Even more Toll Revenues will be diverted if the "covered period" is extended beyond January 31, 2017.

## VIII.  The Enactment Of PROMESA

40.    On June 30, 2016, President Barack Obama signed PROMESA into law. The stated purpose of PROMESA is to "establish an Oversight Board to assist the Government of Puerto Rico, including instrumentalities, in managing its public finances, and for other purposes." H.R. 5278, 114th Cong. (2016) (preamble).

41.    Prior to the passage of PROMESA, the Commonwealth and its instrumentalities, including PRHTA, were not eligible to become debtors under the Bankruptcy Code. See Franklin III, 136 S. Ct. at 1942. PROMESA provides the Commonwealth and its instrumentalities with various bankruptcy-like protections, and many provisions of PROMESA are closely modeled on provisions of the Bankruptcy Code.

42.    As set forth below, PROMESA has several provisions both preempting legislation and executive orders that unlawfully alter the rights of bondholders and prohibiting the transfer of funds between governmental entities out of the ordinary course of business. The Moratorium Act and Emergency Orders are preempted by PROMESA and Section 903(1) of the Bankruptcy Code. In addition, they violate both PROMESA's prohibition of transfers and the Contracts and Takings Clauses of the U.S. and Commonwealth Constitutions.

## IX.  The Bankruptcy Code Preempts The Moratorium Act

43.    Section 903(1) of the Bankruptcy Code provides that "a State law prescribing a method of composition of indebtedness of [a] municipality may not bind any creditor that does not consent to such composition[.]" 11 U.S.C. § 903(1). The Moratorium Act

is a "State" law for purposes of Section 903(1). The Moratorium Act is a law "prescribing a [non-consensual] method of composition of indebtedness" for purposes of Section 903(1), because the Moratorium Act authorizes the Governor to non-consensually restructure PRHTA's debts, including through maturity extensions, deferrals of debt payments, and diversions of collateral. As such, the Moratorium Act is preempted by Section 903(1) of the Bankruptcy Code.

## X.     PROMESA Preempts The Emergency Orders

44.     Section 4 of PROMESA provides, "The provisions of [PROMESA] shall prevail over any general or specific provisions of territory law, State law, or regulation that is [*sic*] inconsistent with [PROMESA]." 130 Stat 551. In addition to this general statement regarding PROMESA's supremacy over Puerto Rico law, PROMESA also contains a number of specific provisions that expressly preempt the Emergency Orders.

### A.     Section 303(3) Of PROMESA Preempts The Emergency Orders

45.     Section 303(3) of PROMESA expressly preempts "unlawful executive orders" like the Emergency Orders, as follows:

> [U]nlawful executive orders that alter, amend, or modify rights of holders of any debt of the territory or territorial instrumentality, or that divert funds from one territorial instrumentality to another or to the territory, shall be preempted by this Act.

130 Stat. 579.

46.     The Emergency Orders are "executive orders" that unlawfully "alter, amend, [and] modify" the rights of PRHTA Bondholders to receive payment of their PRHTA Bonds from the Toll Revenues, which were pledged to the bondholders by the Resolutions. The Emergency Orders also (i) "divert funds" from a "territorial instrumentality" (PRHTA) to "the

territory" (<u>i.e.</u>, the Commonwealth), and (ii) authorize the "diver[sion of] funds" from "one territorial instrumentality" (PRHTA) to "another [territorial instrumentality]" (<u>i.e.</u>, GDB).

47.     The Emergency Orders are "unlawful," because they violate (i) the Contracts and Takings Clauses of the U.S. Constitution, (ii) the Contracts and Takings Clauses of the Constitution of the Commonwealth (the "<u>Commonwealth Constitution</u>"), and (iii) Puerto Rico law.

        1.      <u>**The Emergency Orders Violate The U.S. Constitution**</u>

           a.      <u>**The Emergency Orders Violate The U.S. Contracts Clause**</u>

48.     The Contracts Clause of Article I of the U.S. Constitution (the "<u>U.S. Contracts Clause</u>") provides that "**[n]o State shall ... pass any ... Law impairing the Obligation of Contracts[.]**"  U.S. Const. art. I, § 10, cl. 1 (emphasis added).

49.     In passing the Moratorium Act, the Commonwealth "passed" a "law."  In addition, in issuing the Emergency Orders, the Governor exercised the Commonwealth's police power as delegated to the Governor under the Moratorium Act.  The police power is a legislative power.  <u>See</u>, <u>e.g.</u>, P.R. Const. art. II, § 19 ("The power of the **Legislative Assembly** to enact laws for the protection of the life, health and general welfare of the people shall likewise not be construed restrictively.") (emphasis added).  Therefore, the Governor's issuance of the Emergency Orders, as an exercise of the Commonwealth's police power, constituted a legislative act that likewise effected a change in Commonwealth law.

50.     In this case, the issuance of the Emergency Orders pursuant to the Moratorium Act substantially impaired the contractual rights of Plaintiffs and PRHTA Bondholders, because PRHTA's central contractual undertaking in issuing the PRHTA Bonds was to pay the PRHTA Bonds exclusively (and only) from certain revenues, including the Toll

Revenues, pledged for that purpose, and it was this pledge of particular revenues to payment of PRHTA Bonds that substantially induced PRHTA Bondholders to purchase the bonds and Plaintiffs to insure them.  Specifically:

- The Enabling Act provides that the Resolutions constitute contracts with bondholders, and that such contracts can contain provisions governing, among other things, the application, use, and disposition of Toll Revenues: "Any resolution or resolutions authorizing any bonds may contain provisions, **which shall be a part of the contract with the holders of the bonds . . .** as to the **tolls**, fees and other charges to be imposed, and **the application, use, and disposition of the amounts that may be raised by the collection thereof** and from other receipts of [PRHTA][.]"  9 L.P.R.A. § 2012(e)(2) (emphasis added).

- In keeping with this statutory authorization, the 1968 Resolution governs the use of "Toll Revenues"[3] by, among other things, including "Toll Revenues" in the definition of the term "Revenues:" "The word 'Revenues' shall mean . . . Toll Revenues[.]"  PRHTA Res. 68-18 § 101.

- The 1998 Resolution likewise includes the Toll Revenues within its definition of "Revenues," (except that it excludes from this definition "Existing Toll Facilities Revenues" imposed by PRHTA for the use of traffic facilities financed in whole or in part by the issuance of PRHTA Bonds under the 1968 Resolution).  PRHTA Res. 98-06 § 101.

- The Resolutions also include the other PRHTA Pledged Funds within their definitions of "Revenues."  PRHTA Res. 68-18 § 101; PRHTA Res. 98-06 § 101.

- PRHTA covenanted in the 1968 Resolution that "it will promptly pay the principal of and the interest on every bond issued under the provisions of this Resolution . . . **from Revenues [including Toll Revenues and other PRHTA Pledged Funds]** . . . **which Revenues [including Toll Revenues and other PRHTA Pledged Funds]** and funds  **are hereby pledged to the payment thereof in the manner and to the extent hereinabove particularly specified**."  PRHTA Res. 68-18 § 601 (emphasis added).

---

[3]    "Toll Revenues" is defined to mean the tolls or other charges, if any, imposed by PRHTA for the use of any of its Traffic Facilities.  See PRHTA Res. 68-18 § 101.  "Traffic Facilities" generally means "facilities for which bonds or other obligations shall be issued by [PRHTA] under the provisions of [the 1968 Resolution] the cost of which facilities paid from the proceeds of such bonds or other obligations shall not have been reimbursed to [PRHTA] from funds not encumbered by [the 1968 Resolution]."  PRHTA Res. 68-18 § 101.

- PRHTA likewise covenanted in the 1998 Resolution that "it will promptly pay the principal of and the interest on every bond issued under the provisions of this Resolution . . . from Revenues **[including Toll Revenues and other PRHTA Pledged Funds]** . . . **which Revenues [including Toll Revenues and other PRHTA Pledged Funds]** . . . **are hereby pledged (with such priorities with respect to the use and disposition of Revenues as are in this Resolution specified) to the payment thereof in the manner and to the extent hereinabove particularly specified.** Forthwith upon the repeal and cancellation of the 1968 Resolution, all . . . Existing Toll Facilities Revenues shall be hereby pledged to the payment of the principal of and premium, if any, and interest on the bonds issued under the provisions of this Resolution to the same extent and with the same effect as the pledge of the preceding sentence." PRHTA Res. 98-06 § 601.

51.     The Commonwealth covenanted with holders of PRHTA Bonds in the Enabling Act that it would "not limit or restrict the rights or powers . . . vested in [PRHTA by the Enabling Act] until all [PRHTA Bonds] at any time issued, together with the interest thereon, are fully met and discharged." 9 L.P.R.A. § 2019. By, among other things, limiting PRHTA's "right and power" to fulfill the terms of its pledge of Toll Revenues to the payment of PRHTA Bonds as authorized under the Enabling Act, the Moratorium Act impairs the Commonwealth's covenant with PRHTA Bondholders. Thus, the Moratorium Act, as implemented through the Emergency Orders, substantially impaired the contractual relationships between (i) PRHTA and PRHTA Bondholders, and (ii) the Commonwealth and PRHTA Bondholders.

52.     The diversion of Toll Revenues pursuant to the Emergency Orders to fund (i) PRHTA operating expenses that are contractually subordinated to PRHTA Bonds and (ii) so-called "essential services" defined to include payments to insider affiliate GDB, is not a reasonable or necessary means of serving an important public purpose. The Commonwealth's appropriation of the Toll Revenues ostensibly to finance "essential services" is particularly egregious in view of the fact that PRHTA is a corporate entity separate and distinct from the Commonwealth and does not share the Commonwealth's obligation to generally protect the

health, security, and well-being of the residents of the Commonwealth.   And there is no justification, other than unlawful insider dealing, for the Moratorium Act to classify payments to GDB as an "essential service."

53.   The Commonwealth also had many more reasonable alternatives for dealing with its economic difficulties and those of PRHTA and GDB.

54.   The Commonwealth and PRHTA could have addressed PRHTA's economic difficulties by, among other things:

- Suspending payment of PRHTA's junior debts to the economically distressed insider affiliate GDB, rather than permitting payment of PRHTA Pledged Funds to GDB.

- Reducing PRHTA expenditures.

- Increasing Toll Revenues by raising tolls and adding previously untolled roads to the PRHTA toll system.

- Negotiating a consensual restructuring of PRHTA's debt, similar to the recently-negotiated restructuring of the debts of the Puerto Rico Electric Power Authority.

55.   The Commonwealth could have addressed its own economic difficulties by, among other things:

- Adjusting its budget in accordance with the "priority guidelines" set forth in Puerto Rico's Management and Budget Office Organic Act, Act No. 147-1980, by reducing expenditures for low-priority items, including, without limitation, (i) commitments contracted by the Commonwealth under special appropriations and (ii) the construction of capital works. See 23 L.P.R.A. § 104(c)(4)-(5).

- Raising additional revenues, as required by the Commonwealth Constitution in a fiscal year in which appropriations exceed estimated resources.  See P.R. Const. art. VI, § 7.

- Improving revenue collections.

- Negotiating a consensual restructuring of the Commonwealth's debt.

56.    The Commonwealth and GDB could have addressed GDB's financial difficulties by, among other things:

- Placing GDB into receivership, as provided for under GDB's charter.

- Directly providing funds to assist GDB.

- Working to collect debt owed to GDB by other Puerto Rico instrumentalities in a manner consistent with existing debt priorities.

57.    In view of these more reasonable alternatives, the Moratorium Act and the Emergency Orders do not constitute a reasonable and necessary means of serving an important public purpose and violate the U.S. Contracts Clause.

> **b.    The Emergency Orders Violate The U.S. Takings Clause**

58.    The Takings Clause of the Fifth Amendment to the U.S. Constitution (the "U.S. Takings Clause") provides that **"private property [shall not] be taken for public use, without just compensation."**  U.S. Const. amend. V.  The Takings Clause applies to the States, and the Commonwealth, by virtue of Section 1 of the Fourteenth Amendment to the U.S. Constitution.  See U.S. Const. amend. XIV, § 1.

59.    PRHTA Bondholders have a lien on the Toll Revenues.  See PRHTA Res. 68-18 §§ 601-02; PRHTA Res. 98-06 §§ 601-02.  A lien is a property interest protected by the Takings Clause.  In addition, the PRHTA Bondholders have a contractual right to receive payment from the Toll Revenues, and a contractual right constitutes a form of property for purposes of the Takings Clause.  The Emergency Orders thus violate the U.S. Takings Clause by depriving Plaintiffs and PRHTA Bondholders of these property interests without providing Plaintiffs and PRHTA Bondholders with just compensation.

c.    **The Stay Provisions Of The Moratorium Act And Emergency Orders Impermissibly Deny Access To The Federal Courts**

60.    Pursuant to Section 201(b) of the Moratorium Act, the Emergency Orders purport to prohibit the commencement or continuation of all actions, claims, and proceedings "in any court of whatever jurisdiction" that are "related to" PRHTA Bonds.   Moratorium Act § 201(b)

61.    State courts cannot stay actions in federal courts and state or Commonwealth laws and executive orders cannot stay federal court proceedings, nor can such local laws stay federal constitutional claims filed in federal court.  The Emergency Orders are "unlawful" executive orders subject to preemption under Section 303(3) of PROMESA.

2.    **The Emergency Orders Violate The Commonwealth Constitution**

62.    The Contracts Clause of the Commonwealth Constitution provides that "[n]o laws impairing the obligation of contracts shall be enacted."  P.R. Const. art. II, § 7.  The Takings Clause of the Commonwealth Constitution provides that "[p]rivate property shall not be taken or damaged for public use except upon payment of just compensation and in the manner provided by law."  P.R. Const. art. II, § 9.  The Emergency Orders violate the Contracts and Takings Clauses of the Commonwealth Constitution for the same reasons they violate the Contracts and Takings Clauses of the U.S. Constitution.

3.    **The Emergency Orders Violate Puerto Rico Law**

63.    The Emergency Orders breach the Commonwealth's statutory covenant with PRHTA Bondholders in the Enabling Act "that it will not limit or restrict the rights or powers . . . vested in [PRHTA by the Enabling Act] until all such bonds at any time issued, together with the interest thereon, are fully met and discharged."  9 L.P.R.A. § 2019.  The Emergency Orders also violate several other provisions of the Enabling Act and of the

Resolutions, including the provision of the Enabling Act authorizing PRHTA to determine the use of Toll Revenues (9 L.P.R.A. § 2012(e)(2)); the provision of the Enabling Act authorizing PRHTA to pledge Toll Revenues to payment of PRHTA Bonds (9 L.P.R.A. § 2004(*l*)); and the provisions of the Resolutions that in fact pledge Toll Revenues to payment of PRHTA Bonds (PRHTA Res. 68-18 § 601; PRHTA Res. 98-06 § 601). The Emergency Orders are "unlawful" under Puerto Rico law because they violate these and other provisions of the Enabling Act and of the Resolutions, and as such they are preempted by Section 303(3) of PROMESA.

**B.    Section 204(c)(3) Of PROMESA Preempts EO-30 And EO-31**

64.    Section 204(c)(3)(A) of PROMESA prohibits the Commonwealth from taking certain actions during the period (the "Gap Period") between the enactment of PROMESA and the appointment of all members and the chair (the "Chair") of the oversight board (the "Oversight Board") established by PROMESA:

> During the period after a territory becomes a covered territory and prior to the appointment of all members and the Chair of the Oversight Board, such covered territory shall not enact new laws that either permit the transfer of any funds or assets outside the ordinary course of business or that are inconsistent with the constitution or laws of the territory as of the date of enactment of this Act, provided that any executive or legislative action authorizing the movement of funds or assets during this time period may be subject to review and rescission by the Oversight Board upon appointment of the Oversight Board's full membership.

130 Stat. 572.

65.    On information and belief, EO-30 and EO-31 were issued shortly after PROMESA was enacted into law through the President's signature. See, e.g., Nick Brown, "Puerto Rico authorizes debt payment suspension; Obama signs rescue bill," Reuters (June 30, 2016, 7:16 PM), http://www.reuters.com/article/us-puertorico-debt-idUSKCN0ZG09Y ("Puerto

Rico authorized suspension of payments on its general obligation debt on Thursday **just minutes after U.S. President Barack Obama signed a law creating a federal oversight board** with authority to negotiate the restructuring of the island's $70 billion in debt.") (emphasis added).

66.     The Governor's issuance of EO-30 and EO-31 constituted an exercise of the Commonwealth's police power as delegated to the Governor by the Legislative Assembly under the Moratorium Act, and as such was a legislative act that constituted an "enactment" of "new laws" during the Gap Period.  EO-30 and EO-31 also "permit the transfer of . . . funds or assets outside the ordinary course of business" and "are inconsistent with the . . . laws of [the Commonwealth] as of the date of enactment of [PROMESA]," including, specifically, 9 L.P.R.A. § 2012(e)(2) (authorizing PRHTA to determine the use of Toll Revenues by resolution); 9 L.P.R.A. § 2019 (providing that the Commonwealth shall not limit or restrict the rights or powers vested in PRHTA by the Enabling Act until all PRHTA Bonds have been discharged); and PRHTA Res. 68-18 § 601, PRHTA Res. 98-06 § 601 (pledging Toll Revenues to the payment of the PRHTA Bonds).  EO-30 and EO-31 are therefore also preempted by Section 204(c)(3)(A) of PROMESA.

C.      **Section 407 Of PROMESA Protects Plaintiffs Against Transfers Made Under The Emergency Orders**

67.     Section 407 of PROMESA protects creditors from inter-debtor transfers like those effected under the Emergency Orders, as follows:

> (a) PROTECTION OF CREDITORS.—While an Oversight Board for Puerto Rico is in existence, if any property of any territorial instrumentality of Puerto Rico is transferred in violation of applicable law under which any creditor has a valid pledge of, security interest in, or lien on such property, or which deprives any such territorial instrumentality of property in violation of applicable law assuring the transfer of such property to such territorial instrumentality for the benefit of its creditors, then the transferee shall be liable for the value of such property.

> (b) ENFORCEABILITY.—A creditor may enforce rights under this section by bringing an action in the United States District Court for the District of Puerto Rico after the expiration or lifting of the stay of section 405, unless a stay under title III is in effect.

13 Stat. 592.

68.    An Oversight Board for Puerto Rico came into existence upon enactment of PROMESA pursuant to Section 101(b)(1) of PROMESA.  The Emergency Orders permit the withholding and transfer of Toll Revenues in violation of applicable law (i.e., the Enabling Act and Resolutions) under which Plaintiffs and the PRHTA Bondholders have a valid pledge of, security interest in, and lien on the Toll Revenues.

69.    The Emergency Orders also deprive PRHTA of Toll Revenues in violation of applicable law requiring PRHTA to deposit the Toll Revenues with the Fiscal Agent for the benefit of PRHTA's bondholders.  See PRHTA Res. 68-18 § 401; PRHTA Res. 98-06 § 401.

70.    Under Section 407(a) of PROMESA, any recipients of Toll Revenues transferred pursuant to the Emergency Orders following the enactment of PROMESA, including the Commonwealth and GDB, are therefore liable to Plaintiffs and PRHTA Bondholders for the value of the Toll Revenues so transferred.  In this case, due to the extreme financial distress of the Commonwealth and of GDB, which the Commissioner of Financial Institutions and Judge Fusté, formerly of this Court, have characterized as "insolvency," the remedy of a subsequent action at law to recoup Toll Revenues from the Commonwealth or GDB is plainly inadequate, and thus an injunction to restrain such payments is necessary and appropriate.

## FIRST CLAIM FOR RELIEF
**(For Declaratory Relief Pursuant To 28 U.S.C. §§ 2201 And 2202 For Violations of Section 903(1) Of The Bankruptcy Code, Against PRHTA, The Governor, The Executive Director, The GDB President, The Secretary Of Treasury, And John Does 1-4)**

71.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 70 hereof, as if fully set forth herein.

72.    The Moratorium Act is preempted by Section 903(1) of the Bankruptcy Code, because it is a "State law prescribing a [non-consensual] method of composition" of the indebtedness of a municipality, namely PRHTA.

73.    Plaintiffs are entitled to an order declaring that the Moratorium Act is preempted by Section 903(1) of the Bankruptcy Code and is invalid, null, and void.

## SECOND CLAIM FOR RELIEF
**(For Declaratory Relief Pursuant To 28 U.S.C. §§ 2201 And 2202 For Violations of Section 303(3) Of PROMESA, Against All Defendants)**

74.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 73 hereof, as if fully set forth herein.

75.    The Emergency Orders are preempted by Section 303(3) of PROMESA, because they constitute unlawful executive orders that alter, amend, or modify rights of holders of the PRHTA Bonds and that authorize the diversion of funds from one territorial instrumentality, namely PRHTA, to another, namely GDB, and to the territory, namely the Commonwealth.

76.    Plaintiffs are entitled to an order declaring that the Emergency Orders are preempted by Section 303(3) of PROMESA and are invalid, null, and void.

## THIRD CLAIM FOR RELIEF
**(For Declaratory Relief Pursuant To 28 U.S.C. §§ 2201 And 2202 For Violations Of Section 204(c)(3)(A) Of PROMESA, Against All Defendants)**

77.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 76 hereof, as if fully set forth herein.

78.    EO-30 and EO-31 are preempted by Section 204(c)(3)(A) of PROMESA, because they constitute new laws enacted during the Gap Period that permit the transfer of funds

or assets outside the ordinary course of business and are inconsistent with the laws of the Commonwealth as of the date of enactment of PROMESA.

79.    Plaintiffs are entitled to an order declaring that the Emergency Orders are preempted by Section 204(c)(3)(A) of PROMESA and are invalid, null, and void.

### FOURTH CLAIM FOR RELIEF
**(For Damages Under Section 407(a) Of PROMESA, Against PRHTA, The Commonwealth, And GDB)**

80.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 79 hereof, as if fully set forth herein.

81.    Pursuant to the Emergency Orders, Toll Revenues held by PRHTA as trustee on behalf of the PRHTA Bondholders have been transferred to, or for the benefit of, PRHTA, the Commonwealth, and GDB in violation of applicable law under which the PRHTA Bondholders have a valid pledge of, security interest in, and lien on such Toll Revenues, with the result that PRHTA, in its capacity as a trustee for the PRHTA Bondholders, has been deprived of the Toll Revenues in violation of applicable law assuring the transfer of the Toll Revenues to PRHTA for the benefit of the PRHTA Bondholders.

82.    PRHTA, the Commonwealth, and GDB are liable to Plaintiffs under Section 407(a) of PROMESA for the value of the Toll Revenues transferred to them pursuant to the Emergency Orders.

### FIFTH CLAIM FOR RELIEF
**(For Declaratory Relief Pursuant To 28 U.S.C. §§ 2201 And 2202 For Violations Of The U.S. Contracts Clause, Against PRHTA, The Governor, The Executive Director, The GDB President, The Secretary Of Treasury, And John Does 1-4)**

83.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 82 hereof, as if fully set forth herein.

84.    The Moratorium Act and the Emergency Orders unlawfully interfere with and impair Plaintiffs' contractual rights.

85.    Plaintiffs are entitled to an order declaring that the Moratorium Act and the Emergency Orders are unconstitutional in that they violate the U.S. Contracts Clause and are invalid, null, and void.

## SIXTH CLAIM FOR RELIEF
**(For Declaratory Relief Pursuant To 28 U.S.C. §§ 2201 And 2202 For Violations Of The U.S. Takings Clause, Against PRHTA, The Governor, The Executive Director, The GDB President, The Secretary Of Treasury, And John Does 1-4)**

86.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 85 hereof, as if fully set forth herein.

87.    Pursuant to the Emergency Orders, the Defendants have taken Plaintiffs' property without just compensation.

88.    Plaintiffs are entitled to an order declaring that the Emergency Orders are unconstitutional in that they violate the U.S. Takings Clause and are invalid, null, and void.

## SEVENTH CLAIM FOR RELIEF
**(Injunctive Relief For Violations Of The Bankruptcy Code, PROMESA, And The U.S. Constitution, Against All Defendants)**

89.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 88 hereof, as if fully set forth herein.

90.    The Emergency Orders are preempted by Section 903(1) of the Bankruptcy Code and Sections 303(3) and (in the case of EO-30 and EO-31) 204(c)(3)(A) of PROMESA and violate the U.S. Contracts Clause and the U.S. Takings Clause.

91.    Plaintiffs are entitled to an injunction prohibiting the Defendants from taking or causing to be taken any action pursuant to the Emergency Orders.

**RELIEF DEMANDED**

92.    WHEREFORE Plaintiffs Assured Guaranty Corp. and Assured Guaranty Municipal Corp. respectfully request that the Court enter judgment against Defendants as follows:

(a)    Declaring that the Moratorium Act is preempted by Section 903(1) of the Bankruptcy Code;

(b)    Declaring that the Emergency Orders are preempted by Section 303(3) of PROMESA;

(c)    Declaring that EO-30 and EO-31 are preempted by Section 204(c)(3)(A) of PROMESA;

(d)    Awarding damages under Section 407(a) of PROMESA;

(e)    Declaring that the Moratorium Act and the Emergency Orders are invalid under the U.S. Contracts Clause;

(f)    Declaring that the Emergency Orders are invalid under the U.S. Takings Clause;

(g)    Enjoining Defendants from taking or causing to be taken any action pursuant to the Emergency Orders, and

(h)    Granting Plaintiffs such other and further relief as this Court may deem just and proper.

Dated:       San Juan, Puerto Rico
             []

                                  CASELLAS ALCOVER & BURGOS P.S.C.


                                  By: [DRAFT]_____
                                       Heriberto Burgos Pérez
                                       USDC-PR 204809
                                       Ricardo F. Casellas-Sánchez
                                       USDC-PR 203114
                                       Diana Pérez-Seda
                                       USDC-PR 232014
                                       P.O. Box 364924
                                       San Juan, PR 00936-4924
                                       Telephone:  (787) 756-1400
                                       Facsimile:  (787) 756-1401
                                       Email:  hburgos@cabprlaw.com
                                               dperez@cabprlaw.com


                                  CADWALADER, WICKERSHAM & TAFT LLP


                                  By: [DRAFT]_____
                                       Howard R. Hawkins, Jr. (admission pending)
                                       Mark C. Ellenberg (admission pending)
                                       Ellen M. Halstead (admission pending)
                                       200 Liberty Street
                                       New York, NY 10281
                                       Telephone:  (212) 504-6000
                                       Facsimile:  (212) 406-6666
                                       Email:  howard.hawkins@cwt.com
                                               mark.ellenberg@cwt.com
                                               ellen.halstead@cwt.com