**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| PEAJE INVESTMENTS LLC,<br><br>    **Plaintiff,**<br><br>            **v.**<br><br>ALEJANDRO   GARCIA-PADILLA,  *et al.,*<br><br>    **Defendants.** | **Civil No.** 16-2365 (FAB) |
| ASSURED GUARANTY CORP., *et als.,*<br><br>    **Plaintiffs,**<br><br>            **v.**<br><br>COMMONWEALTH OF PUERTO RICO, *et al.,*<br><br>    **Defendants.** | **Civil No.** 16-2384 (FAB) |
| ALTAIR GLOBAL CREDIT OPPORTUNITIES FUND (A), LLC, *et al.,*<br><br>    **Movants,**<br><br>            **v.**<br><br>ALEJANDRO   GARCIA-PADILLA,  *et al.,*<br><br>    **Respondents.** | **Civil No.** 16-2696 (FAB) |

**MEMORANDUM AND ORDER**

BESOSA, District Judge.

Before the Court are the plaintiffs' motions to vacate the automatic stay imposed by the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA").  (Civil No. 16-2365, Docket

Civil Nos. 16-2365, 16-2384, 16-2696 (FAB)                                    2

No. 1; Civil No. 16-2384, Docket No. 1; Civil No. 16-2696, Docket
No. 1.)  Having considered those motions and the Commonwealth
defendants' opposition to each, Civil No. 16-2365, Docket No. 30;
Civil No. 16-2384, Docket No. 22; Civil No. 16-2696, Docket No. 53,
the Court **DENIES** plaintiffs' motions.  Because of the denial, **the
hearing now scheduled for November 3, 2016 is set aside.**

**BACKGROUND**

**A.    Plaintiffs' Claims**

    Plaintiffs Assured Guaranty Corp. and Assured Guaranty
Municipal Corp. (the "Assured plaintiffs") in Civil No. 16-2384 are
insurers of certain bondholders of the Puerto Rico Highway and
Transportation Authority ("PRHTA").  (Civil No. 16-2384, Docket
No. 1 at p. 1.)  They claim that, through the Puerto Rico Emergency
Moratorium and Financial Rehabilitation Act (the "Moratorium Act")
and certain executive orders approved pursuant to it (the
"Executive Orders"), the Commonwealth has diverted certain PRHTA
toll revenues pledged to secure PRHTA's bonds for the purpose of
paying for PRHTA's own operations and funding "essential services"
of the Commonwealth.  Id. at pp. 1-2.  This diversion of funds
pledged for the repayment of PRHTA bonds, the Assured plaintiffs
allege, violates the Federal and Commonwealth constitutions and
laws of the United States.  Id. at p. 2.

    Plaintiff Peaje Investments LLC ("Peaje Investments") in Civil
No. 16-2365 is the beneficial owner of more than $63 million in

1968 Bonds issued by PRHTA.  (Civil No. 16-2365, Docket No. 1 at p. 1.)  Like the Assured plaintiffs, Peaje Investments alleges that the Commonwealth defendants have engaged in the "unlawful" diversion of pledged toll revenues that secure the repayment of PRHTA bondholders and seeks to challenge the constitutionality of the Moratorium Act and Executive Orders.  Id. at p. 2.

Plaintiffs in Civil No. 16-2696 (the "Altair plaintiffs") are holders of bonds issued by the Commonwealth's Employees Retirement System ("ERS").  Those bonds are secured, through a fiscal agent, by a security interest and lien in and over certain "pledged property" consisting of, among other assets, all future employer contributions and the ERS's right to those contributions.  (Civil No. 16-2696, Docket No. 1 at p. 4.)  The Altair plaintiffs allege that, pursuant to the Moratorium Act and the Executive Orders, the Commonwealth has suspended transfers of ERS revenues to the fiscal agent, and suspended its obligations to make employer contributions to the ERS without providing adequate protection.  Id. at p. 5.

## B.   PROMESA and its Automatic Stay

On June 30, 2016, the United States enacted PROMESA to address the dire fiscal emergency in Puerto Rico.  The legislation was designed to establish "[a] comprehensive approach to [Puerto Rico's] fiscal, management and structural problems and adjustments . . . involving independent oversight and a Federal statutory authority for the Government of Puerto Rico to restructure debts in

a fair and orderly process." PROMESA, § 405(m)(4). Among PROMESA'S provisions is an automatic stay of, among other things, all liability-related litigation against the Commonwealth of Puerto Rico, which was or could have been commenced before the law's enactment. PROMESA § 405(b). Congress deemed that particular component of the legislation "essential to stabilize the region for the purposes of resolving" Puerto Rico's financial crisis. Id. § 405(m)(5). The automatic stay remains in effect until the later of (1) February 15, 2017, with a possible extension of sixty or seventy-five days, or (2) six months after the establishment of an Oversight Board for Puerto Rico (which occurred on August 31, 2016), or (3) the date on which the Oversight Board files a petition on behalf of the Government of Puerto Rico or any of its instrumentalities to commence debt-adjustment proceedings pursuant to title III of PROMESA. PROMESA § 405(d). The Court may, however, grant relief from the stay to "a party in interest" either "for cause shown" after notice and a hearing, or "to prevent irreparable damage to the interest of an entity in property" with or without a hearing. Id. § 405(e)(2), (g).

Plaintiffs in these consolidated actions do not dispute that PROMESA's automatic stay applies to their claims. Rather, they seek relief from the stay "for cause shown" pursuant to Section 405(e) of PROMESA. The Commonwealth opposes the granting of that relief.

## DISCUSSION

**A.    Lifting PROMESA'S Automatic Stay "For Cause"**

The automatic stay imposed by Section 405(b) of PROMESA is not absolute in nature.  Although Congress unambiguously expressed its view that the stay is needed to "provide the Government of Puerto Rico with the resources and the tools it needs to address an immediate existing and imminent crisis," PROMESA § 405(n)(1), it also seemed to anticipate that certain circumstances might justify relief from the stay's significant, rigid effects.  It therefore included a form of safety valve in Section 405(e) of PROMESA to allow certain holders of "liability claims" against the Government of Puerto Rico to proceed with their actions, provided that they could effectively demonstrate "cause" or "irreparable harm" for doing so.

The text of PROMESA, however, does not indicate what, exactly, a party in interest must do to successfully establish "cause" for relief from the automatic stay.  Rather, it leaves the task of defining the boundaries of that specific term to the discretion of the Court.  Thus, before it can proceed to review the arguments and evidence presented by the various parties, the Court must first attempt to hash out and clarify the meaning and parameters of the governing principle of "for cause shown."

    **1.   Defining "Cause" for Relief from Stay**

        Section 405 of PROMESA was patterned on the automatic stay provision of the United States Bankruptcy Code, 11 U.S.C. § 362, ("Section 362").  Indeed, the two provisions are, in some respects, nearly identical.  In light of these appreciable similarities, the Court will attempt to give meaning to the concept of "cause" by looking first to judicial interpretations of that term within the bankruptcy context.  It will then reflect upon certain additional considerations that ought to inform its understanding of what constitutes proper cause to vacate the PROMESA stay.

        **a.   Prevailing Interpretations of "Cause" within Bankruptcy Case Law**

        Similar to Section 405 of PROMESA, Section 362 of the Bankruptcy Code provides that the court may grant relief from the automatic stay to a party in interest "for cause." 11 U.S.C. § 362(d)(1).  Also like PROMESA, however, Section 362 does not provide concrete guidance on how that term ought to be construed and applied in practice.

        United States Courts of Appeals reviewing motions to vacate the Bankruptcy Code's automatic stay pursuant to Section 362(d) have consistently found that the decision to grant that relief is largely discretionary with the court. See, e.g., In re Myers, 491 F.3d 120, 130 (3d Cir. 2007) (commenting on the "wide latitude accorded to the Bankruptcy Court to balance the equities

when granting relief from the automatic stay."); <u>Brown v. Chestnut</u> <u>(In re Chestnut)</u>, 422 F.3d 298, 303-04 (5th Cir. 2005) (noting that 11 U.S.C. § 362 gives the bankruptcy court broad discretion to vacate the automatic stay and "flexibility to address specific exigencies on a case-by-case basis"); <u>Claughton v. Mixson</u>, 33 F.3d 4, 5 (4th Cir. 1994) (noting that Congress "has granted broad discretion to bankruptcy courts to lift the automatic stay" and that "the courts must determine when discretionary relief is appropriate on a case-by-case basis."); <u>Mitsubishi Motors Corp. v.</u> <u>Soler Chrysler-Plymouth, Inc.</u>, 814 F.2d 844, 847 (1st Cir. 1987) (applying abuse of discretion standard to court's decision granting relief from the automatic stay); <u>Matter of Holtkamp</u>, 669 F.2d 505, 507 (7th Cir. 1982) (emphasizing that Section 362(d) "commits the decision of whether to lift the stay to the discretion of the bankruptcy judge.")

    To help guide their analysis of whether to enforce or vacate the stay, some courts, including those in this district, have relied upon a laundry list of assorted factors.  <u>See, e.g.,</u> <u>Sonnax Industries, Inc. v. Tri Component Prods. Corp. (In re Sonnax</u> <u>Industries, Inc.)</u>, 907 F.2d 1280, 1286 (2d Cir. 1990) (enumerating 12 different factors to be utilized in determining whether there is "cause" to vacate a bankruptcy stay, including the "impact of the stay on the parties and the balance of harms"); <u>see</u> <u>also</u> <u>C&A, S.E.</u> <u>v. P.R. Solid Waste Mgmt. Auth.</u>, 369 B.R. 87, 94-95 (D.P.R. 2007)

(Casellas, J.) (considering factors similar to those spelled out in
Sonnax).

          In the end, however, the process of evaluating
whether there is sufficient "cause" to vacate the automatic stay in
bankruptcy cases requires the court to engage in an equitable,
case-by-case balancing of the various harms at stake.  See, e.g.,
Peerless Ins. Co. v. Rivera, 208 B.R. 313, 315 (D.R.I. 1997)
(suggesting that cause generally exists "when the harm that would
result from a continuation of the stay would outweigh any harm that
might be suffered by the debtor . . . if the stay is lifted."); In
re Robinson, 169 B.R. 356, 359 (E.D. Va. 1994) (noting that, "in
deciding whether 'cause' has been shown, the bankruptcy court must
balance the potential hardship that will be incurred by the party
seeking relief if the automatic stay is not lifted, against the
potential prejudice to the debtor" if it is.); In re Turner, 161
B.R. 1, 3 (Bankr. D. Me. 1993) ("Cause may exist for lifting the
stay whenever the stay harms the creditor and lifting the stay will
not unduly harm the debtor."); In re Harris, 85 B.R. 858, 860
(Bankr. D. Colo. 1988) (holding that vacating the automatic stay is
appropriate where "no great prejudice will result to the debtor"
and "the hardship to the creditor resulting by continuing the stay
considerably outweighs the hardship to the debtor by modification
of the stay."); In re Opelika Mfg. Corp., 66 B.R. 444, 448 (Bankr.
N.D. Ill. 1986) ("Cause to lift the stay exists when the stay harms

the creditor and lifting the stay will not unjustly harm the debtor or other creditors.")

The Court finds that this general framework employed in the bankruptcy context is also applicable to these proceedings pursuant to PROMESA.  Thus, in deciding whether the plaintiffs in these cases have established "cause" for relief from the PROMESA stay, the Court's ultimate task is to perform a careful balancing of the equities involved.  It must, in essence, assess the hardships realistically borne by plaintiffs if their requested relief is denied and determine whether those outweigh the harm likely to be visited upon the Commonwealth defendants if that relief is granted.

### i.   **"Lack of Adequate Protection" as Sufficient "Cause"**

Section 362 of the Bankruptcy Code includes one specific type of "cause" sufficient to grant a party in interest relief from stay:  "the lack of adequate protection of an interest in property."  11 U.S.C. § 362(d)(1).  This provision has allowed courts to vacate the stay in bankruptcy proceedings where a secured party, faced with a decrease in the value of its collateral while the stay is in effect, is not supplied by the debtor with an alternative form of relief that will safeguard his interest in that collateral.  See In re Monroe Park, 17 B.R. 934, 937 (D. Del. 1982) ("[T]he concept of adequate protection requires a debtor to propose some form of relief that will preserve the secured creditor's

Civil Nos. 16-2365, 16-2384, 16-2696 (FAB)                    10

interest in the collateral, pending the outcome of bankruptcy proceedings.")

Section 405(e) of PROMESA, however, does not explicitly identify "lack of adequate protection" as a ground for obtaining relief from the stay. At first blush, that omission would seem to suggest that Congress simply did not intend for inadequate protection to justify a secured creditor's circumvention of PROMESA's automatic stay. Indeed, the defendants make this exact argument and entreat the Court, in interpreting the statute, to view the absence of "lack of adequate protection" as a purposeful exclusion of significant consequence. See Civil No. 16-2365, Docket No. 30 at p. 6; Civil No. 16-2696, Docket No. 53 at pp. 9-10.

The Court, however, declines to oblige the defendants on this request. Rather, it finds that Congress was not required to have included "lack of adequate protection" in the statutory text in order for that particular, long-standing means of showing "cause" to be available to creditors in PROMESA proceedings to vacate to stay. This is because the concept of "adequate protection" has constitutional roots, not just statutory ones. See H.R. Rep. No. 95-595, 95th Cong., 1st Sess. at 339 (1977) (the concept of adequate protection "is derived from the Fifth Amendment protection of property interests."); see also In re Timbers of Inwood Forest Associates, Ltd., 793 F.2d 1380, 1390 (5th Cir.

1986), aff'd, 484 U.S. 365 (1988) ("Case law had made adequate protection of the secured creditor a major consideration long before the draft predecessor of the [1978 Bankruptcy Code] proposed to codify it as a requirement."  Secured creditors are, in short, "entitled to constitutional protection for [their] bargained for property interest."  In re Jug End in the Berkshires, Inc., 46 B.R. 892, 899 (Bankr. D. Mass. 1985).  Thus, although Congress did not overtly include "lack of adequate protection" as an example of proper cause in PROMESA Section 405(e), the Constitution nevertheless affords secured creditors the right to invoke that exception when seeking relief from PROMESA's automatic stay.

b.    **Additional Considerations in Interpreting "Cause"**

Before the Court transitions to its evaluation of whether adequate "cause" to vacate the stay exists in these cases, it acknowledges the lack of a "one-to-one" relationship between Section 405 of PROMESA and Section 362 of the Bankruptcy Code.  It recognizes, in other words, that the concept of "cause" embraced by the Court for the purposes of the PROMESA stay need not precisely mirror that adopted in the bankruptcy context.  Although the Court endorses the general analytical approach to "cause" followed in the bankruptcy arena, it is nevertheless mindful of the specific Congressional findings and the enumerated purposes of PROMESA's automatic stay contained within Section 405 of the statute.  These statutory provisions offer valuable insight into Congress' basic

Civil Nos. 16-2365, 16-2384, 16-2696 (FAB)                    12

motive in including the stay provision and have no counterpart in Section 362 of the Bankruptcy Code.  Accordingly, any decision by this Court to vacate the stay in these cases should be consistent with these provisions and should advance the larger, overarching purposes for which PROMESA was enacted.

**B.  The Assured plaintiffs do not have standing to seek relief from the PROMESA stay because they show no "injury in fact"**

Article III standing, which enforces the Constitution's case-or-controversy requirement, is an "indispensable part" of any case and must be present at every stage of the litigation.  See <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992) (noting that standing must be "supported . . . at the successive stages of litigation").  Thus, "[i]f a party lacks Article III standing to bring a matter before the court, the court lacks subject matter jurisdiction to decide the merits of the underlying case." <u>Dubois v. U.S. Dep't of Agric.</u>, 102 F.3d 1273, 1281 (1st Cir. 1996) (citation omitted).  In order to satisfy this constitutional component of standing, "a plaintiff must have suffered an 'injury in fact,' i.e., an invasion of a legally protected interest.  That injury must be 'concrete and particularized'. . . and it must be 'distinct and palpable.'"  <u>Id.</u>

Here, the Assured plaintiffs in Civil No. 16-2384 are not bondholders and therefore are not directly owed money by the relevant bond issuer, PRHTA.  Rather, they are monoline insurers that guarantee scheduled payments of interest and principal to

Civil Nos. 16-2365, 16-2384, 16-2696 (FAB)                          13

PRHTA bondholders if and when that issuer defaults on its payment obligations.  It follows, then, that the Assured plaintiffs will suffer financial harm only in the event of nonpayment by PRHTA. See Civil No. 16-2384, Docket No. 1-5 at p. 1; Docket No. 1-6 at p. 1; Docket No. 1-7 at p. 1.  The facts indicate, however, that an event of nonpayment by PRHTA will not transpire during the pendency of the PROMESA stay.  The Assured plaintiffs admit that there are sufficient funds on deposit with the fiscal agent to satisfy the next installment of principal and interest due on the PRHTA bonds on January 1, 2017, and that the Executive Orders do not prevent the fiscal agent from paying those funds to the PRHTA bondholders. See Civil No. 16-2384, Docket No. 1 at pp. 22, 7.  Because the following installment of principal and interest payments on the relevant bonds would not be due until July 1, 2017 - well after the termination of both the Moratorium Act's "emergency period" and the PROMESA stay - PRHTA bondholders will not miss a single payment during the stay period.  The absence of any default on the PRHTA bonds means that plaintiffs' obligations to make payments pursuant to the relevant insurance policies will not be activated.  This, in turn, means that the Assured plaintiffs will not suffer an "injury in fact" during the pendency of PROMESA's automatic stay.  Because they lack Article III standing to request that the stay be vacated, the Assured plaintiffs' emergency motion seeking that relief is therefore **DENIED**.

**C.    Peaje Investments (16-2384) and the Altair plaintiffs (16-2696) do not lack adequate protection and therefore cannot show "cause" to vacate the stay**

As discussed above, the Court finds that a secured creditor's lack of adequate protection in its collateral can establish the requisite "cause" to vacate the PROMESA stay pursuant to its Section 405(e).  The essential question therefore becomes whether the Peaje and Altair plaintiffs' interests in their respective collateral are adequately protected.  The Court holds that they are.

The term adequate protection is not explicitly defined in the Bankruptcy Code.  Courts, however, have determined that "[t]he focus of the [adequate protection] requirement is to protect a secured creditor from diminution in the value of its interest in [its] particular collateral during the period of use by the debtor."  In re Satcon Tech. Corp., 2012 WL 6091160, at *6 (Bankr. D. Del. 2012); see also In re Swedeland Dev. Group, Inc., 16 F.3d 552, 564 (3d Cir. 1994) ("The whole purpose of adequate protection for a creditor is to insure that the creditor receives the value for which he bargained prebankruptcy."); In re Born, 10 B.R. 43, 48 (Bankr. S.D. Tex. 1981) ("The very heart of the concept of adequate protection is to assure the secured creditor that as the bankruptcy procedures unfold he will not be faced with a decrease in the value of his collateral."); In re Dynaco Corp., 162 B.R. 389, 393 (Bankr. D.N.H. 1993) ("The Court must ensure that, to the extent the debtor

is entitled to use cash collateral, there is adequate protection of the creditor's security interest so as to maintain the 'benefit of the bargain' that the secured creditor originally made with the debtors.")   Thus, the concept of adequate protection generally requires a debtor to propose some alternative form of relief that will preserve the secured creditor's interest in the collateral, pending the outcome of bankruptcy proceedings.   Indeed, "[i]t is well settled that the debtor bears the burden to demonstrate that a creditor is adequately protected." In re S. Side House, LLC, 474 B.R. 391, 408 (Bankr. E.D.N.Y. 2012).   The exact form of protection, however, is flexible.   See In re Monroe Park, 17 B.R. 934, 940 (D. Del. 1982) (noting that adequate protection in the context of relief from the automatic stay "is a flexible concept which requires a Court to make decisions on a case-by-case basis, after full consideration of the peculiar characteristics common to each proceeding.")   That protection may include an additional or replacement lien, periodic payments, or any other method that provides the creditor with the "indubitable equivalent" of its interest in the property.   See 11 U.S.C. § 361.

Here, plaintiff Peaje Investments alleges that the Commonwealth is "diverting and dissipating" pledged toll revenues that serve as hard collateral for the repayment of its PRHTA bonds. (Civil No. 16-2365, Docket No. 1 at p. 6.)   It further asserts that it lacks adequate protection of its interest in those funds because

the bonds are limited recourse obligations and the Commonwealth has offered "[no] compensation whatsoever" for the diverted funds. Id. at p. 22.  In arguing this lack of adequate protection, however, Peaje unjustifiably discounts provisions of both the Moratorium Act and PROMESA that effectively preserve its contractual security interest in PRHTA's pledged revenues.  See Moratorium Act § 204(a) (protecting "the rights of a holder to any collateral, security interest or lien that secures" an obligation that "was otherwise due or became due before or during an emergency period" and "becomes payable at the end of the covered period as a result of this Act."); PROMESA § 405(k) (providing that the automatic stay "does not discharge an obligation of the Government of Puerto Rico or release, invalidate, or impair any security interest or lien securing such obligation.")  Because of these provisions, and because PRHTA'S  pledged revenues are constantly replenished by an ongoing stream of toll payments, Peaje Investments continues to hold a security interest in a stable, recurring source of income that will eventually provide funds for the repayment of the PRHTA bonds.  Though it will not receive the pledged revenues during the stay period, this enduring security interest means that it faces only a delay in recouping such funds, not a permanent loss of them.

     The Court believes that the existence of this continuing lien on a perpetual source of revenue satisfies the "flexible" standard applicable to determinations of adequate protection.  It therefore

holds that the Commonwealth has carried its burden of showing that Peaje Investments, as a PRHTA bondholder, will, in due time, receive the "indubitable equivalent" of its current interest in PRHTA's pledged toll revenues.  Accordingly, plaintiff Peaje Investments' motion to lift the stay is **DENIED**.

A similar analysis applies to the Altair plaintiffs' claim of inadequate protection.  Those plaintiffs, pursuant to the terms of the applicable bond resolution, hold a security interest and lien in certain pledged property, including all future employer contributions.  This lien continues indefinitely until ERS's outstanding debt obligations have been satisfied in full.  As discussed above, nothing in the language of PROMESA or the Moratorium Act diminishes or destroys this lien against the ERS employer contributions, which, like the PRHTA toll revenues, are a perpetual revenue stream whose value is not decreased by the Commonwealth's acts of temporary suspension.  Following the expiration of the PROMESA stay and the expiration of the ERS's "emergency period," that enduring stream of ERS pledged property will once again flow to the fiscal agent to be held for the benefit of ERS bondholders.  Thus, while the Altair plaintiffs will not receive the benefit of the pledged property during the pendency of

Civil Nos. 16-2365, 16-2384, 16-2696 (FAB)                    18

the stay,[1] they will only be delayed in recovering the funds needed to repay their ERS bonds.  Their interest in the ERS pledged property is, therefore, adequately protected.

Because the Peaje Investments and the Altair plaintiffs have failed to meet their burden to show "cause" pursuant to Section 405(e) of PROMESA, the Court's analysis with respect to their individual motions to vacate the automatic stay is complete.  See In re Sonnax Indus., Inc., 907 F.2d 1280, 1285 (2d Cir. 1990) ("If the movant fails to make an initial showing of cause . . . the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection.")

**CONCLUSION**

Plaintiffs in Civil No. 16-2384 lack Article III standing to seek relief from the PROMESA stay.  Plaintiffs in Civil No. 16-2365 and Civil No. 16-2696 do not lack adequate protection and therefore cannot carry their initial burden of showing cause to vacate the stay.  Accordingly, plaintiffs' motions to vacate the stay are **DENIED**.  (Civil No. 16-2365, Docket No. 1; Civil No. 16-2384, Docket No. 1; Civil No. 16-2696, Docket No. 1.)

---

[1] The fact that the Altair plaintiffs will not receive the benefit of the pledged property during the pendency of the stay is of no moment.  Because there are sufficient monies in the debt service and reserve accounts to service the bondholder debt until April 1, 2017, not a single principal or interest payment will be missed while the PROMESA stay remains in place.  The Altair plaintiffs therefore face no financial harm as a result of the stay.

Civil Nos. 16-2365, 16-2384, 16-2696 (FAB)                    19

The Court hastens to add that the Commonwealth defendants must not abuse or squander the "breathing room" that the Court's decision fosters. The purpose of the PROMESA stay is to allow the Commonwealth to engage in meaningful, voluntary negotiations with its creditors without the distraction and burden of defending numerous lawsuits. The Commonwealth should take full advantage of the relief the Court offers it today to fulfill that essential objective. Indeed, it has an obligation to do so.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, November 2, 2016.

<u>s/ Francisco A. Besosa</u>
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE