# United States Court of Appeals
## For the First Circuit

No. 16-2377

PEAJE INVESTMENTS LLC,

Movant, Appellant,

v.

ALEJANDRO GARCÍA-PADILLA ET AL.,

Respondents, Appellees.

No. 16-2430

PEAJE INVESTMENTS LLC,

Movant, Appellee,

v.

ALEJANDRO GARCÍA-PADILLA ET AL.,

Respondents, Appellees,

FINANCIAL OVERSIGHT AND MANAGEMENT BOARD,

Movant, Appellant.

No. 16-2431

ASSURED GUARANTY CORPORATION; ASSURED GUARANTY MUNICIPAL
CORPORATION,

Plaintiffs, Appellees,

v.

COMMONWEALTH OF PUERTO RICO ET AL.,

Defendants, Appellees,

———————————

FINANCIAL OVERSIGHT AND MANAGEMENT BOARD,

Movant, Appellant.

———————————

No. 16-2433

ALTAIR GLOBAL CREDIT OPPORTUNITIES FUND (A), LLC ET AL.,

Movants, Appellants,

CLAREN ROAD CREDIT MASTER FUND, LTD. ET AL.,

Movants,

v.

ALEJANDRO GARCÍA-PADILLA, in his official capacity as the
Governor of Puerto Rico, ET AL.,

Respondents, Appellees.

———————————

No. 16-2435

PUERTO RICO FIXED INCOME FUND V, INC. ET AL.,

Movants, Appellees,

v.

ALEJANDRO GARCÍA-PADILLA, in his official capacity as the
Governor of Puerto Rico, ET AL.,

Respondents, Appellees,

———————————

FINANCIAL OVERSIGHT AND MANAGEMENT BOARD,

Movant, Appellant.

———————————

No. 16-2437

BRIGADE LEVERAGED CAPITAL STRUCTURES FUND LTD. ET AL.,

Plaintiffs, Appellees,

v.

ALEJANDRO J. GARCÍA-PADILLA, in his official capacity as
Governor of Puerto Rico, ET AL.,

Defendants, Appellees,

GOVERNMENT DEVELOPMENT BANK OF PUERTO RICO,

Defendant,

——————————————

FINANCIAL OVERSIGHT AND MANAGEMENT BOARD,

Movant, Appellant.

——————————————

No. 16-2438

NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION,

Plaintiff, Appellee,

v.

ALEJANDRO J. GARCÍA-PADILLA ET AL.,

Defendants, Appellees,

——————————————

FINANCIAL OVERSIGHT AND MANAGEMENT BOARD,

Movant, Appellant.

——————————————

No. 16-2439

US BANK TRUST NATIONAL ASSOCIATION,

Plaintiff, Appellee,

v.

ALEJANDRO GARCÍA-PADILLA, in his official capacity as Governor
of the Commonwealth of Puerto Rico, ET AL.,

Defendants, Appellees,

————————————

FINANCIAL OVERSIGHT AND MANAGEMENT BOARD,

Movant, Appellant.

————————————

No. 16-2440

DIONISIO TRIGO-GONZALEZ ET AL.,

Plaintiffs, Appellees,

CARMEN FELICIANO VARGAS ET AL.,

Plaintiffs,

v.

ALEJANDRO GARCÍA-PADILLA, in his official capacity as Governor
of Puerto Rico, ET AL.,

Defendants, Appellees,

————————————

FINANCIAL OVERSIGHT AND MANAGEMENT BOARD,

Movant, Appellant.

————————————

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Francisco A. Besosa, U.S. District Judge]

————————————

Before

Howard, Chief Judge,
Thompson and Kayatta, Circuit Judges.

---

G. Eric Brunstad, Jr., with whom Allan S. Brilliant, Robert J. Jossen, Andrew C. Harmeyer, Dechert LLP, Dora L. Monserrate Peñagarícano, and Monserrate Simonet & Gierbolini, LLC were on brief, for Peaje Investments LLC.

Erin E. Murphy, with whom Susan Marie Davies, Michael F. Williams, Peter A. Farrell, Matthew D. Rowen, Kirkland & Ellis LLP, and Margarita Luisa Mercado-Echegaray, Solicitor General of Puerto Rico, were on brief, for Alejandro García-Padilla, Juan C. Zaragoza-Gómez, Luis Cruz-Batista, and Carmen Villar-Prados.

Michael Luskin, with whom Stephan E. Hornung and Luskin, Stern & Eisler LLP were on brief, for Financial Oversight and Management Board.

Richard A. Chesley, with whom John M. Hillebrecht, Neal F. Kronley, and DLA Piper LLP (US) were on brief, for The Employees Retirement System of the Commonwealth of Puerto Rico.

Sparkle L. Sooknanan, with whom Beth Heifetz, Geoffrey S. Stewart, Bruce Bennett, Benjamin Rosenblum, Jones Day, Alfredo Fernández-Martínez, Delgado & Fernández, LLC, Arturo Díaz-Angueira, José C. Sánchez-Castro, Alicia I. Lavergne-Ramírez, Maraliz Vázquez-Marrero, Lopez Sanchez & Pirillo LLC, Glenn M. Kurtz, John K. Cunningham, Jason N. Zakia, and White & Case LLP were on brief, for Altair Global Credit Opportunities Fund (A), LLC, Glendon Opportunities Fund, LP, Nokota Capital Master Fund, L.P., Oaktree-Forrest Multi-Strategy, L.L.C. (Series B), Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Oaktree Value Opportunities Fund, L.P., SV Credit, L.P., Claren Road Credit Master Fund, Ltd., Claren Road Credit Opportunities Master Fund, Ltd., and Ocher Rose, L.L.C.

---

January 11, 2017

---

**HOWARD**, <u>**Chief Judge**</u>.    These appeals involve the application of certain provisions of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), <u>see</u> 48 U.S.C. §§ 2101-2241, a statute enacted by Congress in June 2016 to address Puerto Rico's financial crisis.  As relevant here, PROMESA provides for a temporary stay of debt-related litigation against the Puerto Rico government.  <u>See id.</u> § 2194(a)-(b).  But the statute does not leave creditors entirely without recourse during the presumptive pause.  Rather, it allows them to move for relief from the stay and directs district courts to grant such relief "after notice and a hearing . . . for cause shown."  <u>Id.</u> § 2194(e)(2).  Because we conclude that Movant-Appellant Peaje Investments LLC ("Peaje") failed to set forth a legally sufficient claim of "cause" to lift the PROMESA stay, we affirm the district court's denial of its lift-stay motion.  By contrast, the various appellants in <u>Altair Global Credit Opportunities Fund (A), LLC</u> v. <u>García-Padilla</u> (No. 16-2433) (the "Altair Movants" and, together with Peaje, the "Movants")[1] presented sufficient allegations to entitle them to a hearing.  Accordingly, we vacate the district court's denial of

---

[1] Some of the co-movants in this case elected not to appeal. For simplicity, this opinion uses the phrase "Altair Movants" to refer only to those movants that have appealed.  Appellee García-Padilla, who was solely an official capacity defendant in these appeals, is no longer Governor of Puerto Rico.  We use his name in this opinion merely to avoid confusion.

their lift-stay motion and remand for the court to hold such a hearing.

## I.

Peaje is the beneficial owner of certain bonds issued by the Puerto Rico Highways and Transportation Authority ("PRHTA"). The bonds are secured by a lien on toll revenues, among other things.  In July 2016, Peaje initiated the instant action in district court by filing a motion to lift the PROMESA stay so that it could challenge the diversion of PRHTA toll revenues pledged as collateral for the bonds.  Peaje alleged that, acting pursuant to the Puerto Rico Emergency Moratorium and Financial Rehabilitation Act ("Moratorium Act"), see 2016 P.R. Laws Act 21, the Puerto Rico government was diverting the toll revenues to other uses, thereby diminishing the value of Peaje's collateral.

About two months later, the Altair Movants, holders of certain bonds issued by the Commonwealth's Employees Retirement System ("ERS"), filed a similar motion to lift the PROMESA stay. The Altair Movants claimed that the Commonwealth had suspended required transfers to the fiscal agent of employer contributions pledged as collateral for the bonds.

PROMESA's stay of the commencement of certain actions until February 15, 2017, applies to the lawsuits the Movants seek to pursue.  See 48 U.S.C. § 2194(d)(1)(A)(i).  The stay may be extended until as late as April 17, 2017, if the district court

determines that additional time is needed to complete a voluntary restructuring process, or to May 1 if the Financial Oversight and Management Board ("Board") makes a similar finding. See id. § 2194(d)(1)(B)-(C). The district court is directed to grant relief from the PROMESA stay "for cause shown" after "notice and a hearing." Id. § 2194(e)(2).

After consolidating the actions, the district court scheduled a November 3 hearing on the motions to lift the PROMESA stay for cause. On the eve of the hearing, however, the court issued an order denying the lift-stay motions. In seeking to define the "cause" standard, the court looked to the Bankruptcy Code's automatic stay provision. The court held that "lack of adequate protection" for creditors constitutes cause for lifting the PROMESA stay, just as it does under the Bankruptcy Code. Turning to the Movants' specific claims, the court held that neither Peaje nor the Altair Movants lacked adequate protection. Because the toll revenues are "constantly replenished," Peaje continued "to hold a security interest in a stable, recurring source of income that will eventually provide funds for the repayment of the PRHTA bonds." Similarly, the employer contributions in which the Altair Movants claimed an interest "are a perpetual revenue stream whose value is not decreased by the Commonwealth's acts of temporary suspension." The Movants timely appealed.

## II.

### A.    Appellate Jurisdiction

As an initial matter, we address our appellate jurisdiction under 28 U.S.C. § 1291. In the analogous bankruptcy context,[2] we have held that the denial of relief from a stay is not necessarily a final decision sufficient to confer appellate jurisdiction. See In re Atlas IT Exp. Corp., 761 F.3d 177, 185 (1st Cir. 2014). But such a decision is final where it "conclusively decide[s] the fully-developed, unreviewable-elsewhere issue that triggered the stay-relief fight." Id. The order on appeal here did precisely that. It rejected the Movants' substantive arguments, holding that their interests in the collateral were adequately protected. After that ruling, there was nothing left for the district court to do.

### B.    Denial of Relief from Stay

Turning to the merits of the lift-stay motions, the parties primarily dispute two issues concerning whether actions by Puerto Rico that impair or remove the collateral securing the

---

[2] Appellees García-Padilla, Zaragoza-Gómez, Cruz-Batista, and Villar-Prados seek to distinguish the district court's refusal to lift the PROMESA stay from a similar ruling on a motion to lift a bankruptcy stay, primarily because the PROMESA stay is of limited duration and is designed to protect unique interests. While these differences may bear on whether the stay should be lifted, they do not signal congressional intent for the denial of stay relief to have different jurisdictional consequences in these two related contexts. Compare 48 U.S.C. § 2194, with 11 U.S.C. § 362.

pertinent bonds is cause for lifting the stay: (1) whether such an impairment or removal satisfies PROMESA's "cause" standard if it leaves the creditor's interest in having the debt repaid inadequately protected; and (2) if so, did the district court commit reversible error by failing to conduct a hearing on whether the Movants here were inadequately protected. On the record in this case, we answer the first question in the affirmative. On the second question, we issue a split decision. Because Peaje failed even to make a legally sufficient claim that it lacked adequate protection, we conclude that the district court did not commit reversible error in denying its lift-stay motion without an evidentiary hearing. The Altair Movants, on the other hand, were entitled to such a hearing.

On the threshold issue of whether lack of adequate protection constitutes cause to lift the PROMESA stay, Appellees García-Padilla, Zaragoza-Gómez, Cruz-Batista, Villar-Prados, and ERS (together, the "Appellees") point out that the relevant section of the Bankruptcy Code, unlike PROMESA, expressly defines "cause" to include lack of adequate protection. Compare 11 U.S.C. § 362(d)(1), with 48 U.S.C. § 2194(e)(2). They contend that PROMESA's omission on this point is meaningful and reflects Congress's intent that "cause" not be defined to include actions impairing the collateral in a manner that leaves the interest in having the debt repaid inadequately protected.

But the Appellees' contention runs headlong into the "cardinal principle" of constitutional avoidance. <u>Crowell</u> v. <u>Benson</u>, 285 U.S. 22, 62 (1932). Under this canon, when confronted with a statute of questionable constitutional validity, we must "first ascertain whether a construction . . . is fairly possible by which the [constitutional] question may be avoided." <u>Id.</u> If so, we adopt that construction. In the bankruptcy context, Congress's explicit designation of lack of adequate protection as cause to lift a stay was based, at least in part, on constitutional concerns. <u>See</u> H.R. Rep. No. 95-595, at 339 (1977), <u>reprinted in</u> 1978 U.S.C.C.A.N. 5963, 6295 (explaining that the concept of adequate protection "is derived from the [F]ifth [A]mendment protection of property interests"). Indeed, prior to the enactment of the current bankruptcy stay provision, the Supreme Court had recognized that creditors are constitutionally entitled to protection "to the extent of the value of the[ir] property." <u>Wright</u> v. <u>Union Cent. Life Ins. Co.</u>, 311 U.S. 273, 278 (1940); <u>see also</u> <u>United States</u> v. <u>Sec. Indus. Bank</u>, 459 U.S. 70, 75-78 (1982) (applying principle of constitutional avoidance to provision of Bankruptcy Code where a contrary reading "would result in a complete destruction of the property right of the secured party" in its collateral). The PROMESA stay implicates these same constitutional concerns. Under the Appellees' reading of the statute, the Commonwealth could expend every penny of the Movants'

collateral, leaving the debt entirely unsecured. Because we doubt the constitutionality of such a result, we hold that lack of adequate protection for creditors constitutes cause to lift the PROMESA stay.[3]

In the bankruptcy context, one "common form" of adequate protection is "the existence of an equity cushion." 3 Collier on Bankruptcy ¶ 362.07[3][d][i] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2016) [hereinafter Collier]; see also Baybank-Middlesex v. Ralar Distribs., Inc., 69 F.3d 1200, 1203 (1st Cir. 1995). Such an equity cushion exists "if the value of the collateral available to the creditor exceeds by a comfortable margin the amount of the creditor's claim." Collier ¶ 362.07[3][d][i]. The widespread acceptance of an equity cushion as a form of adequate protection makes eminent sense. Indeed, the "interest" for which the bankruptcy stay statute requires protection is "the right of a secured creditor to have the security applied in payment of the debt." United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 370 (1988) (emphasis added). Therefore, an oversecured creditor cannot

---

[3] This conclusion is also consistent with bankruptcy precedent considering possible harm to creditors as part of the "cause" inquiry, even before the concept of adequate protection was explicitly codified. See, e.g., In re Timbers of Inwood Forest Assocs., Ltd., 793 F.2d 1380, 1390–91 (5th Cir. 1986), aff'd, 484 U.S. 365 (1988); In re Anchorage Boat Sales, Inc., 4 B.R. 635, 641–42 (Bankr. E.D.N.Y. 1980).

"demand to keep its collateral rather than be paid in full."  In re Pac. Lumber Co., 584 F.3d 229, 247 (5th Cir. 2009).

Here, in denying the lift-stay motions, the district court, while not using the precise term, relied on the existence of an equity cushion.  It cited future toll revenues and employer contributions, which it concluded would eventually flow to the fiscal agents in sufficient quantity to repay the bonds, to support its finding of adequate protection.  On appeal, the Movants contend that the district court erred in finding these future funds sufficient to ensure repayment of the bonds without first holding a hearing.

PROMESA appears to contemplate that rulings on lift-stay motions will issue only "after notice and a hearing."  48 U.S.C. § 2194(e)(2).  And we agree that it certainly could have simplified matters had the district court conducted a hearing in these cases. But, under the bankruptcy stay statute, we have held that this same language does not require an actual hearing in every case. See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 814 F.2d 844, 847 (1st Cir. 1987) (affirming decision vacating stay without a hearing where "the court had the benefit of the papers filed by both parties" and the debtor "identified no . . . viable reasons for maintaining the stay"); see also In re Sullivan Ford Sales, 2 B.R. 350, 354 (Bankr. D. Me. 1980) ("There was complete awareness on the part of the principal congressional architect of

the Code that 'after notice and a hearing' did not contemplate a hearing in every instance."). A hearing may be unnecessary where, for example, the material facts are not disputed. See In re Marron, 485 B.R. 485, 491 (D. Mass. 2012).

The Appellees contend that no hearing was required because the Movants did not claim or propose to show facts sufficient to establish lack of adequate protection. The significance of this purported shortcoming depends upon PROMESA's allocation of the burden of proof. We begin with the statutory language, which provides that district courts shall grant relief from the stay "for cause shown." 48 U.S.C. § 2194(e)(2). By requiring a "show[ing]" of cause, the statute places the burden on the movant. Where, as here, the only cause identified is an impairment of collateral that leaves the interest in repayment inadequately protected, it follows that the movant bears the burden of establishing such cause. In the bankruptcy context, however, Congress altered this result by enacting an express burden-shifting framework under which the movant "has the burden of proof on the issue of the debtor's equity in property," but the debtor "has the burden of proof on all other issues." 11 U.S.C. § 362(g). PROMESA contains no analogous provision.

While the complexity of the Bankruptcy Code and the sui generis nature of PROMESA counsel caution in too readily inferring that any silence in PROMESA on a matter addressed in the Code is

a legislative rejection of the Code's approach on that matter, such differences nevertheless do raise the possibility that such was precisely Congress's intent.  See Helmer v. Goodyear Tire & Rubber Co., 828 F.3d 1195, 1202 (10th Cir. 2016) (explaining that where "a legislature models an act on another statute but does not include a specific provision in the original, a strong presumption exists that the legislature intended to omit that provision" (citation omitted)).  Enhancing that possibility here is the fact that, prior to the enactment of § 362, bankruptcy courts placed the burden on creditors to show that they would be harmed by continuation of the stay.  See, e.g., In re Planned Sys., Inc., 78 B.R. 852, 858 (Bankr. S.D. Ohio 1987); Anchorage Boat Sales, 4 B.R. at 641 n.6.  Where the alleged harm was a decrease in the value of the creditor's collateral, the required showing included evidence "that the value of the collateral [was] not substantially in excess of the amount of the debt."  In re Wynn Homes, Inc., 14 B.R. 520, 523 (Bankr. D. Mass. 1981).  In light of Congress's decision not to transplant the Bankruptcy Code's express alteration of the pre-Code burden regime into PROMESA, we hold that PROMESA, like the pre-Code regime, places the burden on creditors to establish cause, including lack of adequate protection.

        Indeed, there are sound policy reasons supporting Congress's choice to allocate the burden of proof differently under

PROMESA and the Bankruptcy Code.  The PROMESA stay, while similar in operation to its bankruptcy counterpart, was designed to address a truly unique situation, namely the "immediate . . . and imminent" fiscal crisis facing Puerto Rico.  48 U.S.C. § 2194(n)(1). Congress found that a stay of litigation was necessary to allow the Commonwealth "a limited period of time during which it can focus its resources on negotiating a voluntary resolution with its creditors instead of defending numerous, costly creditor lawsuits."  Id. § 2194(n)(2).  Moreover, the PROMESA stay, which lasts a maximum of about ten months, is less burdensome to creditors than a bankruptcy stay, which may persist for the entirety of the bankruptcy proceeding.[4]  In light of the temporary nature of the PROMESA stay, as well as Congress's express intent to minimize "creditor lawsuits," it makes sense to require creditors to shoulder the burden of demonstrating that the impairment of the collateral will likely harm their protected interest in repayment.

Thus, in order to establish an entitlement to relief, the Movants were required to prove, respectively, that future toll revenues and employer contributions more likely than not failed to

---

[4] If debt-adjustment proceedings are commenced under Title III of PROMESA, the statute contemplates that the bankruptcy stay provision will become fully applicable.  See 48 U.S.C. § 2161(a) (incorporating by reference 11 U.S.C. § 362).  Assuming that this possibility materializes, presumably the Movants will have the option of seeking relief from the stay under § 362.

provide a sufficient equity cushion to protect their interests in the wake of the Commonwealth's ongoing diversion of collateral. It follows that, absent any allegation that these future funds would be insufficient, the Movants lacked a viable claim to relief, and the district court was not required to hold a hearing to consider a claim that was facially insufficient. See Mitsubishi, 814 F.2d at 847.

Peaje's claim failed to clear this hurdle. In its motion, Peaje alleged that the applicable bond resolution requires the PRHTA to deposit monthly toll revenues with a fiscal agent. The agent, in turn, credits the funds to one of several accounts, which must be maintained at certain levels. According to Peaje, the Commonwealth has stopped making the required deposits, resulting in depletion of the accounts. In opposing Peaje's lift-stay motion, the Commonwealth responded that "[a]ny particular toll revenue not allocated to the . . . bonds today could simply be made up for by toll revenues collected tomorrow." Peaje sought to rebut this proposition by asserting that the Commonwealth failed to "argue, let alone demonstrate, that any future collateral will be sufficient to cover the expenses coming due" in the future "and to make up all obligations falling into arrears during the stay period." This statement reflects a misunderstanding of the adequate protection requirement. While Peaje may have had a contractual right to monthly deposits with the fiscal agent and

the maintenance of the accounts at particular levels, its protected interest for purposes of the lift-stay motion was limited to its interest in repayment of the debt owed.  See Timbers, 484 U.S. at 370; Pac. Lumber, 584 F.3d at 247.  Nowhere in its district court filings did Peaje claim that the current diversion of toll revenues would leave that interest inadequately protected.  In light of Peaje's admitted security interest in future toll revenues, this omission was fatal.

The Altair Movants' claim, by contrast, warranted a hearing.  Unlike Peaje, they included in their district court filings a 2014 statement by ERS that uncertainty about future employer contributions could affect "the repayment of the [ERS's] bond payable."  Crucially, this alleged uncertainty applies to contributions from municipalities as well as those from the Commonwealth.  The Altair Movants' allegations as to the insufficiency of future funds to protect their interest in repayment of the debt entitled them to a hearing.  ERS attempts to avoid this result by citing a joint stipulation filed in the district court reflecting ERS's representation that the allegedly diverted employer contributions are currently being held in an operating account.  The parties, however, dispute whether the Altair Movants' lien extends to this account.  If it does not, the Altair Movants face the prospect of being left with a mere unsecured claim.  ERS provides no authority for the proposition

that such a claim may constitute adequate protection.  Because the district court made no finding as to whether the Altair Movants' lien extends to the operating account, and the parties have not briefed the issue on appeal, we decline to address this question in the first instance.[5]

## C.    Denial of Intervention

Having established the need to remand for further proceedings on the Altair Movants' lift-stay motion, we must now consider the district court's denial of the Board's motion to

---

[5] We note that the Altair Movants' request for adequate protection here appears to be quite modest.  They ask only that the employer contributions collected during the PROMESA stay be placed "in an account established for the benefit of Movants."  In light of ERS's representation that it is not currently spending the funds, but instead simply holding them in an operating account, this solution seems to be a sensible one.  At oral argument, ERS expressed concern that transferring the contributions to an account subject to the Altair Movants' lien might violate the Moratorium Act.  But this concern may not present an obstacle to ERS's ability to settle or otherwise resolve this federal action. See, e.g., Badgley v. Santacroce, 800 F.2d 33, 38 (2d Cir. 1986) ("When the defendants chose to consent to a judgment . . . the result was a fully enforceable federal judgment that overrides any conflicting state law . . . ."); Brown v. Neeb, 644 F.2d 551, 563 (6th Cir. 1981) ("A federal court's power under the Supremacy Clause to override conflicting state laws . . . is well established.").

Of course, this is not the only path to a finding that the Altair Movants' interest is adequately protected.  An equity cushion is not the "sine-qua-non for adequate protection," which is a "flexible concept to be tailored to the facts and circumstances of each case." In re Smithfield Estates, Inc., 48 B.R. 910, 914 (Bankr. D.R.I. 1985); see also Collier ¶ 362.07[3][f].  Again, we leave the existence of adequate protection to the district court to assess on remand.

intervene as of right in those proceedings under PROMESA and Federal Rule of Civil Procedure 24.[6]  We have jurisdiction to consider an appeal from this decision.  See, e.g., In re Efron, 746 F.3d 30, 34 (1st Cir. 2014).  The Board, an entity created by Congress to help Puerto Rico "achieve fiscal responsibility and access to the capital markets," 48 U.S.C. § 2121(a), moved to intervene in district court to oppose the lift-stay motions.  The court denied the Board's motion, citing its purported failure to attach a "pleading that sets out the claim or defense for which intervention is sought," as required by Fed. R. Civ. P. 24(c).

Several circuits, including our own, have eschewed overly technical readings of Rule 24(c) similar to that applied by the district court here.  See, e.g., City of Bangor v. Citizens Commc'ns Co., 532 F.3d 70, 95 n.11 (1st Cir. 2008) (finding "no abuse of discretion in the district court's decision to elevate substance over form" and excuse the failure to file a pleading with a motion to intervene); United States v. Metro. St. Louis

---

[6] The Board filed five additional appeals raising almost identical issues (Nos. 16-2431, 16-2437, 16-2438, 16-2439, and 16-2440).  The movants in these cases, unlike Peaje and the Altair Movants, have not challenged the district court's denial of their lift-stay motions.  For this reason, the Board's appeals are dismissed as moot.  See, e.g., Pittsburgh Terminal Corp. v. Balt. & Ohio R.R. Co., 824 F.2d 249, 256 (3d Cir. 1987) (finding appeal from denial of motion to intervene moot where "[t]he disputes in which [the appellant] s[ought] to protect his interests ha[d] been resolved in his favor").  Similarly, in light of our ruling today on Peaje's appeal, the Board's appeal in that case (No. 16-2430) is dismissed as moot.

Sewer Dist., 569 F.3d 829, 834 (8th Cir. 2009) (finding that "statement of interest satisfie[d] Rule 24(c) because it provide[d] sufficient notice to the court and the parties of [the movant's] interests"); Massachusetts v. Microsoft Corp., 373 F.3d 1199, 1236 n.19 (D.C. Cir. 2004) (explaining that, absent any claim of "inadequate notice," there was "no reason to bar intervention based solely upon" the "technical defect" of failure to attach a pleading). Accordingly, denial of a motion to intervene based solely on the movant's failure to attach a pleading, absent prejudice to any party, constitutes an abuse of discretion. See Providence Baptist Church v. Hillandale Comm., Ltd., 425 F.3d 309, 314-15 (6th Cir. 2005). That is exactly what the district court did here.

The district court's reliance on an overly technical reading of Rule 24(c) was particularly problematic in the unique procedural context of this case. The Movants initiated the proceedings by filing motions to lift the PROMESA stay. No other pleadings (e.g., a complaint) were pending when the Board moved to intervene. The Board could hardly have been expected to respond to a complaint that had not yet been filed. And the Board did attach to its motion an opposition to the requests to lift the PROMESA stay, setting forth its position on the issue. In these circumstances, there was no prejudice from the Board's failure to attach some additional unspecified pleading to its intervention

motion.  Indeed, no party has opposed the Board's intervention in district court or on appeal.[7]

We hold that the district court's rejection of the Board's intervention motion constituted an insufficiently supported exercise of discretion.  Accordingly, we remand to the district court to apply the proper standard.  See Negrón–Almeda v. Santiago, 528 F.3d 15, 27 (1st Cir. 2008).  Rule 24(a) requires district courts to allow intervention where the movant "is given an unconditional right to intervene by a federal statute."  Fed. R. Civ. P. 24(a)(1).  While we leave the resolution of this issue to the district court in the first instance, we note that PROMESA appears to grant the Board such a right.  See 48 U.S.C. § 2152(a).

**III.**

For the foregoing reasons, we **AFFIRM** the district court's denial of Peaje's motion to lift the PROMESA stay, but **VACATE** its denial of the Altair Movants' motion.  We also **VACATE** the court's denial of the Board's motion to intervene in the litigation of the Altair Movants' motion for relief from the stay.

---

[7] In denying the Board's motion, the district court relied exclusively on our prior statement that failure to comply with Rule 24(c) "ordinarily would warrant dismissal" of an intervention motion.  Pub. Serv. Co. v. Patch, 136 F.3d 197, 205 n.6 (1st Cir. 1998).  But this statement about the "ordinar[y]" consequences of failure to attach a pleading provides little guidance in the present case, where the Board did attach an opposition to the lift-stay motions clearly setting forth its position on the issue for which it sought intervention.

The case is remanded for further proceedings consistent with this opinion.  In conducting such proceedings, the district court should be mindful of Congress's explicit direction to "expedite" its disposition of the matter "to the greatest possible extent."  48 U.S.C. § 2126(d).  The parties shall bear their own costs, and the mandate shall issue forthwith.